IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOSHUA D. CARSON                                                                                           PLAINTIFF

v.                              Civil No. 3:24-cv-03014-TLB-MEF

OFFICER ALENA BROWN                                                                                    DEFENDANT

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff, Joshua D. Carson ("Carson"), filed this civil rights action under 42 U.S.C. § 1983. Carson proceeds *pro se* and *in forma pauperis* ("IFP"). The claims at issue in this case arose while Carson was incarcerated in the Baxter County Detention Facility ("BCDF"). While housed at the BCDF, Carson contends Defendant Brown violated his federal constitutional rights by failing to provide him with adequate medical care. Carson has sued Defendant Brown in both her individual and official capacity.

Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purpose of making this Report and Recommendation on the Motion for Summary Judgment on the issue of exhaustion, brief, and statement of undisputed facts filed by Defendant Brown. (ECF Nos. 15-17). Carson has responded to the Motion. (ECF Nos. 19 & 20). Defendant Brown elected not to file a reply. By Order entered on October 16, 2024, Defendant Brown was directed to supplement her Motion for Summary Judgment with exhibits referenced in her Motion but not

1

attached.  (ECF No. 26).  Carson was given until November 12, 2024, to supplement his response if he desired to do so.  No supplement has been filed.  The Motion is now ready for decision.

## I.    BACKGROUND

Carson was booked into the BCDF on December 11, 2023.  (ECF No. 17-2 at 1).  He remained incarcerated there until his transfer to the Arkansas Division of Correction (ADC) on January 9, 2024.  *Id.* at 2.

Carson filed this case on February 21, 2024.  (ECF No. 1).  Because of deficiencies in the original complaint, Carson was ordered to file an Amended Complaint.  (ECF No. 3).  Carson was given explicit and detailed instructions about the requirements of the Amended Complaint.  *Id.*  Carson filed his Amended Complaint on March 7, 2024.  (ECF No. 6).

Carson lists the dates of occurrences as between December 11, 2023, and January 9, 2024.  (ECF No. 6 at 6).  Carson was in convicted status during his incarceration in the BCDF.  *Id.* at 2.

In Claim One, Carson says that on December 17, 2023, he suffered numerous seizures, vomited, and defecated on himself, and was denied medical attention by Defendant Brown.  (ECF No. 6 at 4 & 5).  Defendant Brown believed he was faking the seizures.  *Id.* at 4.  Carson indicates he was denied a shower for eight hours and forced to lay in his vomit and waste.  *Id.*  At the time, Carson indicates he was being held in an isolation cell.  *Id.* at 5.

In Claim Two, Carson alleges he was denied medical attention from an unidentified transport officer and staff when they denied him the opportunity to travel to the medical center and the opportunity to visit his neurologist at another hospital.  (ECF No. 6 at 6).

2

For relief, Carson seeks compensatory and punitive damages. (ECF No. 6 at 9). He also asks that Defendant be given proper training on how to handle inmates with seizures. *Id.*

When the Amended Complaint was screened pursuant to 28 U.S.C. § 1915A, the claims against all Defendants except Defendant Brown were dismissed for failure to set forth plausible claims. (ECF Nos. 8 & 11). The Amended Complaint was ordered to be served on Defendant Brown. (ECF No. 9). After Defendant Brown answered, the Court entered a Bench Order staying discovery and advising Defendant Brown that if she wished to pursue an exhaustion defense, she should do so by filing a summary judgment motion by July 22, 2024. (ECF No. 14). Defendant Brown elected to file a Motion for Summary Judgment. (ECF Nos. 15-17). The following day, the Court entered an Order directing Carson to respond to the Motion. (ECF No. 18). Carson timely filed his response. (ECF Nos. 19-20). As previously noted, Defendant Brown failed to file several exhibits with her Motion, but those exhibits have now been submitted. (ECF No. 27).

## II.   LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the non-moving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a

genuine issue of material fact exists." *Nat'l Bank of Commerce v. Dow Chemical Co*., 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.   DISCUSSION

Defendant Brown has moved for summary judgment on the issue of exhaustion. Defendant Brown maintains Carson failed to submit a grievance regarding the December 17, 2023, incident. Indeed, Defendant Brown asserts that Carson submitted no grievances about any subject during his incarceration at the BCDF.

### A.   The Exhaustion Requirement

The Prison Litigation Reform Act ("PLRA") in 42 U.S.C. § 1997e(a) provides: "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Exhaustion is mandatory. *Porter v.*

4

*Nussle*, 534 U.S. 516, 524-25 (2002). In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court concluded "to properly exhaust administrative remedies prisoners must complete the administrative review process in accordance with the applicable procedural rules." *Id*. at 218 (internal quotation marks and citation omitted). The Court stated that the "level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id*. A prisoner's remedies are exhausted "when [the] inmate pursues the prison grievance process to its final stage and receives an adverse decision on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012).

In *Ross v. Blake*, 578 U.S. 632, 643-44 (2016), the Supreme Court noted three instances where the administrative remedy is unavailable. Thus, failure to exhaust in these situations does not end the claim: (1) "[W]hen (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates[;]" (2) "[When] an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it[;]" and (3) "[W]hen prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation, or intimidation." *Id.*

### B. The BCDF Grievance Procedure

BCDF has an "inmate grievance system" designated as Policy #5.10. (ECF No. 17-3). For purposes of the policy, a grievance is defined as: "a written complaint made to the Jail

Administrator by an inmate concerning policy, procedure, conditions or actions by staff that may directly affect the inmate personally." *Id.* at 1. Detainees are notified of the grievance procedure through a summary of the procedure contained in the inmate handbook. *Id.*

Grievable subjects include: "[j]ail policy, procedures or conditions that affect an inmate personally"; "[a]ctions taken by staff or other inmates that have the effect of depriving the inmate of a guaranteed right, service or privilege"; and "[a]llegations of abuse, neglect or mistreatment by staff or other inmates." (ECF No. 17-3 at 2). The jail lieutenant is charged with insuring that "a sufficient number of Inmate Grievance forms are available for distribution to inmates." *Id.* Inmates may request a form "from any staff member. Once a request has been made, the staff member will be responsible for providing the inmate with a form prior to leaving the facility at the end of his/her duty tour." *Id.* The inmate is "responsible for completing the form and returning it to a jail officer." *Id.*

The substance of the grievance must contain:

1.) Inmate Name, housing location and current date;
2.) Whether the form is being filed as a "grievance or an []appeal;"
3.) Date and time of the alleged incident or action that caused the grievance to be filed;
4.) A specific description or summary of the incident;
5.) Jail officer(s), inmate(s) or other person(s) involved in the incident; and
6.) Signature of the inmate.

(ECF No. 17-3 at 3).

Jail officers are "responsible for accepting all completed grievance forms" and placing them in a "file box marked 'Jail Administrator.'" (ECF No. 17-3 at 3). The Jail Administrator ("JA") is required to maintain a log of all complaints. *Id.* The JA or

designee "will investigate all inmate grievances and provide a <u>written response to the inmate within five (5) working days</u>" of the date of receipt of the grievance. *Id.* (emphasis in original). The response is required to contain certain information, must be forwarded to the inmate within the scheduled time frame, and a notation made in the log book. *Id.* at 4. A separate file is maintained for all inmate grievances. *Id.* "**Copies of inmate grievances will not be filed in the inmate's confinement record**." *Id.* (emphasis in original). If the inmate is not satisfied with the response, the inmate may file a written appeal to the Sheriff "within 24 hours of the receipt of the Jail Administrator's response by the inmate." *Id.*

Defendant maintains the policy requires grievances to be submitted within seven (7) days. There is no such provision in the policy. However, in the supplemental exhibits there is a three-page notice to inmates which includes the following provision regarding grievances:

> **You must submit a written grievance if you believe you have been subjected to abuse, harassment, abridgement of your civil rights, or wrongful denial of privileges while you are in the Baxter County Detention Facility.** The grievance must be in writing and must be submitted within 7 days of the incident which is the subject of the grievance. The grievance shall state fully the time, date, names of those detention officers and/or staff members involved, and other pertinent details of the incident, including any/all injuries and the names of any witnesses. Grievances will be responded to in writing within a reasonable amount of time, allowing for any necessary investigation. Any detainee who is not satisfied with the grievance response must file an appeal of the response within 48 hours of the receipt of the response. The appeal shall be filed in writing, specifying the reasons for the detainee's dissatisfaction with the response in detail. Grievances or appeals which are untimely or incomplete will not be considered.

(ECF No. 27-4 at 3).[1]

### C. Application

As a preliminary matter, § 1997e(a) clearly applies here: (1) Carson was incarcerated at the BCDF at the time he filed his Complaint; and (2) the factual predicate of his claims stem from Defendant Brown's failure to provide medical care on December 17, 2023, while he was incarcerated in the BCDF. 42 U.S.C. § 1997e(a).

The Court turns to the question of whether Carson exhausted his administrative remedies prior to filing suit. According to the BCDF custodian of records, Captain Lewis, "[t]here is no record of [Carson] submitting a grievance while at" BCDF. (ECF No. 17-1 at 1). The affidavit contains no description of the efforts undertaken to make this determination. Further, the Court has not been provided with any "requests" or other submissions by Carson.

Carson's medical records indicate he was seen at Baxter Regional Medical Center on December 11, 2023, and diagnosed with epilepsy. (ECF No. 27-1 at 2). Carson was treated at the hospital again on December 16, 17, and 21 due to seizures. *Id.* at 24, 38, 52. The Inmate Log also reflects Carson was on well-being checks which required frequent visual surveillance by guards on December 17. (ECF No. 27-3 at 18).

---

[1] While the grievance summary contained in the inmate notice adds the 7-day restriction on inmates' filing of grievances, it omits reference to the requirement that the JA respond to the grievance within 5 working days.

In his response, Carson asserts he did file a grievance. (ECF No. 19 at 2). Carson maintains he wrote the grievance on the form and handed it to Jailer Shawnee Carpenter.[2] *Id.* He maintains this occurred in the "vestibule part of the jail going into the inmate housing pods" and the proof should be on the camera footage.[3] *Id.* According to Carson, the grievance form is a one-page form, "not having carbon copies attached." *Id.* Carson states the administration or anyone working at the BCDF could destroy grievances without anyone being wiser, "which is exactly what has taken place in this event." *Id.* Carson further asserts that he called his girlfriend on the inmate phone system and read her the grievance he had written and was going to turn in. *Id.* at 3. Carson indicates that this can be verified by listening to the "jail systems' recordings of the inmate" phone calls. *Id.*

In response to Defendant Brown's statement of undisputed facts, Carson provides some more details about his submission of a grievance. (ECF No. 20). He states he first requested a grievance form from Defendant Brown who refused. (ECF No. 20 at 2). During the next shift, Carson requested and was given a grievance form from a jailer known as Peanut. *Id.* He completed the form and then called his girlfriend and read it to her. *Id.* "A couple of days later (before the 7 day time period was up)," Carson says he gave the form to Jailer Carpenter. *Id.* After having not received a response in approximately a week, Carson says he spoke to Lieutenant

---

[2] December 17, 2023, was a Sunday. If Carson had submitted the grievance on that day, the response would have been due December 22, 2023. However, Carson apparently does not recall the date he submitted the grievance. He could have submitted the grievance as late as December 24, 2024, to be within the 7-day filing period.

[3] Carson asks that the Court subpoena the recorded camera footage for the month of December. (ECF No. 19 at 2).

9

Dennis and requested an update on the grievance's status. *Id.* at 4. Carson indicates he was informed that Lieutenant Dennis had not "had a chance to read the grievance nor respond." *Id.*

Because Carson did not receive a response to the grievance within five working days, he maintains the issue has been defaulted and exhaustion cannot be asserted against him. (ECF No. 20 at 4); (ECF No. 19 at 4). Finally, Carson maintains he submitted requests for admission to the JA that were not responded to. (ECF No. 19 at 4). In one, he asked the JA to admit he did not respond to Plaintiff's grievance within five working days. *Id.* In view of this, Carson says it cannot now be argued that he failed to exhaust his grievances. *Id.* at 4-5. Carson states he was transferred to the ADC before receiving a response to his grievance. *Id.* at 5. Carson states he wrote to the Sheriff of Baxter County numerous times asking for a response to his grievance but his letters were never answered. *Id.*

In sum, Carson argues the JA prevented him from utilizing the grievance procedure by (1) "not responding to a grievance he filed," (2) "destroying the grievance itself and by falsely stating that [he] did not file a grievance," (3) "transferring [him] to the ADC without responding to the grievance," and (4) requiring the use of a one-page grievance form without carbon copies preventing him from being able to prove he submitted a grievance. (ECF No. 19 at 7).

After having fully reviewed the summary judgment record, the Court is left with opposing statements regarding whether Carson submitted a grievance about Defendant Brown's conduct on December 17, 2023. In fact, Carson has suggested at least two ways in which his submission of a grievance could be verified: by camera footage of him handing the grievance to a jailer; and by the recording of his phone conversation with his girlfriend. These means of verification, if they

10

still exist and have not been overwritten because of inadequate storage space, could be accessed by Defendant Brown. Finally, after his transfer to the ADC, Carson has sworn under penalty of perjury that he wrote the Baxter County Sheriff numerous times asking for a response to the grievance.

The positions of the parties are diametrically opposed. The Court is not free to judge the credibility of the opposing statements. Given Carson's sworn statement that he submitted a handwritten grievance regarding Defendant Brown's failure to provide him with medical care, the Court concludes that a genuine issue of material fact precludes summary judgment in Defendant Brown's favor on the issue of exhaustion of remedies.

## IV.  CONCLUSION

For these reasons, it is recommended that the Defendant Brown's Motion for Summary Judgment (ECF Nos. 15-17) be **DENIED.**

**Status of the Referral:  This case should remain referred for all matters not recommended for dismissal in this Report and Recommendation.**

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of November 2024.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE

11